# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLANA GENEVA TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0606-CVE-FHM |
| | ) |
| THE CITY OF TULSA, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is defendant's Motion to Dismiss (Dkt. # 22). Defendant seeks dismissal of the amended complaint for failure to state a claim upon which relief can be granted. Pursuant to the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). While defendant has titled its motion a "motion to dismiss," the Court notes that defendant has already filed an answer (Dkt. # 8) to the amended complaint. Thus, the motion to dismiss is untimely and the Court will construe defendant's motion as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## I.

Plaintiff, an African-American female, is employed by the City of Tulsa (the City) as the Director of the Human Rights Department. Jim Twombly was plaintiff's immediate supervisor during the relevant time period. During the weeks prior to September 2010, plaintiff was assigned the task of preparing a "HUD 5-year action plan," to be provided to the federal government in compliance with federal grant regulations. Plaintiff alleges that the directors of other departments,

who had been directed by Twombly to supply information to plaintiff for use in the plan, were uncooperative and failed to provide adequate information to plaintiff. As a result, plaintiff alleges that the plan she submitted was "incomplete, but reparable." Dkt. # 5 at 3.

Twombly confronted plaintiff about the deficiencies in the plan, and plaintiff alleges that during this interaction she felt discriminated against due to her sex and race. On September 7, 2010, plaintiff submitted an official grievance with the City's Human Resources Department alleging that Twombly created a hostile work environment as a result of his racial and sexual discrimination toward plaintiff. The Director of Human Resources, Erica Felix-Warwick, who plaintiff alleges was under the direct supervision of Twombly, personally investigated plaintiff's claim. On October 6, 2010, Felix-Warwick issued the results of her investigation, which found that there was no evidence that Twombly discriminated against plaintiff or created a hostile work environment.

On October 8, 2010, Twombly sent plaintiff a "written reprimand" and disciplinary action report stating that plaintiff's job performance in completing the 5-year plan was negligent, inefficient, or incompetent. A hearing was held on the disciplinary action report on February 11, 2011. The hearing officer determined that plaintiff should be reprimanded in the manner requested by Twombly and suspended plaintiff for five days without pay.

Plaintiff filed her complaint on September 30, 2011 (Dkt. # 1) and filed an amended complaint on October 4, 2011 (Dkt. # 5). The amended complaint alleges that defendant "has allowed a policy wrongfully retaliating against city employees" and that Twombly "was acting as a policy-maker for the City of Tulsa." Dkt. # 5 at 2, 8. The amended complaint is not a model of clarity in that it does not separately delineate the various claims for relief brought by plaintiff. However, it appears that plaintiff is alleging a due process claim for violation of her Fifth [sic

Fourteenth] Amendment rights, and claims of retaliation and discrimination in violation of her Fourteenth Amendment rights, all of which are brought pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983.[1]

## II.

"After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000); accord Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1223-24 (10th Cir. 2009). In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

---

[1] In its motion, defendant states that "Title VII liability is not at issue in this matter." Dkt. # 22 at 10. However, defendant argues that, even if it were, plaintiff "has failed to adequately plead a Title VII claim and the administrative exhaustion necessary for same . . . ." Id. Plaintiff responds by stating that there "is clearly no Title VII claim in the *Amended Complaint.*" Dkt. # 29 at 1. Plaintiff argues that defendant's "revival of this exhaustion defense seems either a misguided strategy to trick the court to overlook [plaintiff's] well-plead claims or it is the world's longest Freudian slip due to [plaintiff's] social and political minority statuses." Id. at 3. It is clear that defendant was merely making the Title VII argument in an abundance of caution, and there is no evidence to support plaintiff's claim that defendant intended to "trick" the Court. As to plaintiff's reference to a "Freudian slip," there is simply no meaning of that phrase that makes the reference intelligible.

3

complaint." Id. at 562. Although decided within an antitrust context, Twombly stated the pleadings standard for all civil actions. See Ashcroft v. Iqbal, 556 U.S. 662 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB–TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs, 263 F.3d 1151, 1154-55 (10th Cir.2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.3d 1106, 1109-10 (10th Cir. 1991).

"Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).

**III.**

Defendant argues that plaintiff's § 1981 and § 1983 claims must fail because plaintiff has failed to state a claim upon which relief can be granted. As noted by both parties, the sole means by which a plaintiff may pursue a § 1981 claim against a municipality is by bringing a claim under § 1983. In Bolden v. City of Topeka, 441 F.3d 1129, 1134-37 (10th Cir. 2006), the Tenth Circuit recognized the United States Supreme Court's decision in Jett v. Dallas Independent School District, 491 U.S. 701 (1989), wherein it was held that § 1983 provides the exclusive damages remedy for

the rights guaranteed by § 1981 for claims against state actors, such as municipalities. Under Jett, therefore, § 1981 claims are restricted by the same doctrines limiting § 1983 claims. Bolden, 441 F.3d at 1135.

To state a claim against a municipality under § 1983, and by extension under § 1981, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232-33 (10th Cir. 2007). Section 1983 "will not support a claim based on a *respondeat superior* theory of liability." Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981). In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482-83 (1986); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir.1998) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997)).

Defendant argues that the amended complaint fails to adequately allege that plaintiff's alleged constitutional deprivation occurred pursuant to an official policy or custom, or was the result of actions taken by an official with final policymaking authority. Plaintiff does not address this argument in her opposition (Dkt. # 29) to defendant's motion.

### A. Official Policy or Custom

In order to show that the alleged constitutional deprivation occurred pursuant to an official policy, plaintiff must show that there was a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996) (internal citations omitted). The amended complaint alleges that the City "allowed a policy wrongfully retaliating against city employees . . . ." Dkt. # 5 at 8. Plaintiff has not identified a specific official policy, adopted and promulgated by the City, that allowed for the alleged constitutional violations. Plaintiff's conclusory statement that such a policy exists is not sufficient to state a plausible claim. See Reed v. Ottawa Cnty. Sheriff's Dep't, No. 10-CV-305-GKF-TLW, 2010 WL 5209260, at *2 (N.D. Okla. Dec. 16, 2010) (granting motion to dismiss where complaint "fails to allege any specific facts upon which a fact finder could plausibly determine that any policy . . . existed that violated the Constitution").

Even in the absence of an official policy, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." Praprotnik, 485 U.S. at 127 (internal quotations omitted). See also Jett, 491 U.S. at 736 (governmental entities may be liable for a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity"). For a § 1983 claim based on custom to withstand Rule 12(b)(6) dismissal, the plaintiff must sufficiently allege the following:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [municipality's] employees;
>
> (2) Deliberate indifference to or tacit approval of such misconduct by the [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and

> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts.

Gates v. Unified Sch. Dist. No. 449, 996 F.2d 1035, 1041 (10th Cir. 1993). In attempting to prove the existence of such a "continuing, persistent and widespread" custom, "plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." Carney v. City & Cnty. of Denver, 534 F.3d 1269, 1274 (10th Cir. 2008). Generally, "allegations of an isolated incident are not sufficient to show the existence of a custom or policy." Reed 2010 WL 5209260, at *2 (citing Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992)).

The amended complaint does not contain any allegations of constitutional violations other than those allegedly committed against plaintiff. Plaintiff makes only broad conclusory allegations that the City maintained a "policy" of violating the constitutional rights of its employees. Plaintiff has not made any allegation that a similarly situated individual was mistreated in a similar way. The only allegations contained in the amended complaint regarding an allegedly similarly situated individual are that the other individual was treated less harshly than plaintiff. There is no allegation that the other individual's constitutional rights were violated. Plaintiff has not made any factual allegations that would support a finding that the City had a custom of violating the rights of its employees. Thus, plaintiff has failed to allege a plausible claim that her rights were violated due to a custom of the City. See Reed, 2010 WL 5209260, at *2.

**B.     Official with Final Policymaking Authority**

The determination of whether an individual has final policymaking authority is a question of law. Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2, 523 F.3d 1219, 1224 (10th Cir. 2008) ("The judge, not the jury, should determine who exercises final policymaking authority in a municipality."). The Tenth Circuit has stated that "policymaking authority is discovered by looking to the presence of legal authority rather than examining the facts of its exercise in a particular case." Id. at 1229. In determining whether an official is a final policymaker within his area of authority, courts look primarily to two factors: (1) "whether his 'discretionary decisions are constrained by general policies enacted by others;'" and (2) "whether those 'decisions are reviewable by others." Id. at 1228 (quoting Dill v. City of Edmond, 155 F.3d 1193, 1211 (10th Cir. 1998)).

The amended complaint alleges that "Jim Twombly was acting as a policy-maker for the City of Tulsa." Dkt. # 5 at 2. However, plaintiff does not make any factual allegations that would support her conclusory statement, nor does plaintiff address this issue in her response to defendant's motion. Defendant, on the other hand, argues that the City Charter unambiguously shows that Twombly was not the final policymaker regarding discipline of employees.

In determinating whether an individual is an official policymaking authority for a city, courts in the Tenth Circuit have routinely examined the city charter to determine where official

policymaking authority is vested.[2] See Milligan-Hitt, 523 F.3d 1226; Dill, 155 at 1211. The 1989 Amended Charter of the City of Tulsa (City Charter), Article X, provides that a "merit system is hereby created" and that "suspensions, removals and demotions shall be made solely for cause and the good of the service." Dkt. # 22-1 at 6. Article X also creates a Civil Service Commission consisting of five members who "shall adopt rules and regulations governing the merit system which . . . shall become effective upon approval by the Council . . . . The personnel rules and regulations shall particularly provide for: . . . [t]he grounds for disciplinary action . . . ." Id. These provisions demonstrate that the Civil Service Commission is responsible for establishing the rules and regulations governing employee discipline. Those rules and regulations must then be approved by the City Council. Thus, Twombly's discretionary decisions, and the decisions of the hearing officer, regarding plaintiff's discipline were constrained by general policies enacted by others and neither Twombly nor the hearing officer meets the first criterion for being an official with final policymaking authority.

Twombly and the hearing officer also fail to meet the second criterion for being an official with final policymaking authority because their decisions regarding employee discipline are

---

[2] Ordinarily, consideration of material outside the pleadings that is attached to a motion for judgment on the pleadings requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence. Fed. R. Civ. P. 12(d); David v. City & County of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996). However, facts subject to judicial notice may be considered in a Rule 12(c) motion without converting the motion into a motion for summary judgment. See Denver Health & Hosp. Auth. v. Beverage Distribs. Co., No. 11-cv-01407-LTB-KLM, 2012 WL 400320, at *13 (D. Colo. Feb. 8, 2012); see also Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 n.1 (10th Cir. 2004). Because the Court can take judicial notice of the City Charter, see Melton v. City of Okla. City, 879 F.2d 706, 724 (10th Cir. 1989), this motion need not be converted to one for summary judgment. In addition, plaintiff did not object to defendant's reliance on the City Charter and did not request that the motion be converted to a summary judgment motion.

9

reviewable by others. The City Charter provides that when an employee is suspended without pay, she "may file a written request with the Personnel Director for a hearing before the Civil Service Commission." Dkt. # 22-1 at 8. The Civil Service Commission "shall be required" to hold a hearing at which it may not affirm a suspension "unless sustained by a preponderance of the evidence." Id. at 9. If the Civil Service Commission finds that the employee was suspended "without adequate cause, the position of the employee shall be restored without loss of pay. If the Civil Service Commission shall find cause, it may approve or modify the action taken . . . ." Id. at 10. The employee is entitled to be represented at the hearing by "counsel or another person." Id. at 9. These provisions make clear that any decisions regarding employee discipline are reviewable by the Civil Service Commission. Thus, Twombly's recommendation that plaintiff be suspended, and the suspension imposed by the hearing officer, were reviewable by the Civil Service Commission. Neither Twombly nor the hearing officer could be the final policymaking authority regarding employee suspension because their decisions were reviewable by others.[3]

Because the discretionary decisions of Twombly and the hearing officer regarding employee discipline are constrained by general policies enacted by others and because those decisions are reviewable by others, neither Twombly nor the hearing officer are final policymaking authorities regarding employee discipline. Thus, the City cannot be held liable under § 1981 and § 1983

---

[3]    Plaintiff does not address this argument in her opposition to the motion. However, in the amended complaint, plaintiff alleges that she "attempted to appeal the findings" of the hearing, but she "was denied that right." Dkt. # 5 at 6. As an initial matter, there are no factual allegations made to support this conclusory statement. Furthermore, the Tenth Circuit has clearly stated that, when determining the final policymaking authority, courts should look to the "presence of legal authority rather than examining the facts of its exercise in a particular case." Milligan-Hitt, 523 F.3d at 1229. Thus, the relevant inquiry is what legal authority the City has vested in Twombly and others, rather than how the disciplinary decision was executed in plaintiff's case.

because plaintiff's alleged constitutional deprivation was not the result of an action taken by an individual with final policymaking authority. See <u>Milligan-Hitt</u>, 523 F.3d at 1227 (holding that municipality was not liable for actions of individual who was not final policymaking authority).

Because plaintiff has not adequately alleged that the alleged constitutional deprivation occurred pursuant to an official policy or custom, or was the result of actions taken by an official with final policymaking authority, defendant is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that defendant's motion for judgment on the pleadings (Dkt. # 22) is **granted**. A separate judgment will be entered herewith.

**IT IS FURTHER ORDERED** that defendant's pending motion in limine (Dkt. # 23) is **deemed moot**.

**DATED** this 15th day of June, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE